In re PADDOCK.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. WILL—CONSTRUCTION—LEGACIES CHARGEABLE ON HOMESTEAD.

Testator gave his wife a life estate in the homestead farm and any land which he might buy adjoining, and $1,000 out of his personal estate with which to erect two houses on real estate which she herself owned for the use of two children who had been brought up by them. His executors were empowered to sell all other real estate, from the proceeds of which the wife was to receive $1,000, with which to erect a tombstone, and after her death to sell the rest and residue of his real estate for the purpose of carrying out the instrument. By a codicil the two children were bequeathed $1,000 each. Testator was a farmer, making between $400 and $500 a year, and there was nothing to indicate that he had any expectation of augmenting his property to any material extent. *Held*, that the legacies given to the two children by the codicil were a charge on the homestead after the wife's death, but that the legacy for the erection of the houses was not, it having been testator's intention that the latter should be paid from the personal property and the proceeds of the real estate, other than the homestead, alone.

Appeal from Surrogate's Court, Tompkins county.

Proceedings to settle the accounts of William S. Paddock, executor of Stephen M. Paddock, deceased. From a decree settling the accounts and holding certain legacies chargeable on the real estate, the executor appeals. Reversed.

Stephen M. Paddock, the testator whose will is here for construction, died upon the 18th day of October, 1895, leaving, him surviving, his widow, Mary A. Paddock, and no children, but two sisters, Sarah E. Warner and Elsey Ann Burnett and a nephew, William S. Paddock, a son of another sister. The respondents here are Eugene Terry and Frank Terry, who were brought up as the children of the testator, who never had children, and they sustained that relationship to the testator until they were 24 or 25 years of age. In 1887 the will in question was executed. By that will the testator gave to his wife a life estate in the homestead farm and any lands which he might buy

adjoining said farm. He next gave to his wife $1,000 out of his personal estate, with which she was to erect two dwelling houses, of equal cost, as near as may be, on certain real estate which she owned, and which she had theretofore willed to Frank Terry and Eugene Terry, for the benefit of said legatees. His executors were thereafter directed to pay to each of two parties $25 a year during the lifetime of his wife, and after her decease $100. The fourth provision of the will follows, wherein his executors were authorized and empowered to sell all other real estate of which he might die seised, from the proceeds of which his wife should receive $1,000, with which she was to erect a monument for their mutual benefit. The use and income of the remainder of the testator's personal property was then given to the wife for life, and it was provided that the above provisions for her were in place of dower and distributive share in his estate. By the seventh clause of the will it was then provided that, after the death of his wife, his estate should be divided—to his sister Sarah E. Warner, one-half; to his sister Elsey Ann Burnett, one-fourth; and to his nephew William S. Paddock, one-fourth. By the eighth clause it was provided that his wife should give no security, but that his nephew, whom he joined with her as executor, should give security in a bond in a penalty of at least $15,000. The ninth clause of the will then provides: "After the decease of my said wife, my surviving executor is hereby authorized and empowered to sell the rest and residue of my real estate and convey the same for the purpose of carrying out this instrument." In October, 1894, the testator executed a codicil in these words: "I give, devise and bequeath to Eugene Terry and Frank Terry the sum of $1,000 each." On the 26th day of June, 1901, his widow, Mary A. Paddock, died, and letters testamentary were duly issued to William S. Paddock, the nephew, as the surviving executor of the will of Stephen M. Paddock. Upon the accounting, it appeared that at the time of the death of Stephen M. Paddock his personal estate was just about sufficient to pay his debts. The evidence is not clear as to just what real estate he had in addition to the homestead farm. After the making of his will, however, he seems to have purchased some real estate adjoining the homestead farm, as was apparently contemplated in the will; and he seems also to have had a small parcel of real estate aside from that, which the executors sold under the fourth clause of the will. The evidence does not disclose what was received from the sale of this real estate, but it appears to have been a small amount. The testator was a farmer, making between $400 and $500 a year, and there was nothing to indicate that he had any expectation of augmenting his property to any material extent. After the death of Mary A. Paddock, the surviving executor sold the homestead farm, and received therefrom a little upwards of $6,000, and at the time of the accounting he had in his hands for distribution the sum of $6,620.66.

Upon his accounting, as surviving executor, Frank Terry and Eugene Terry made claim for payment in full of the $1,000 given to Mary A. Paddock for their benefit, and also of the $2,000 given to them by the codicil of the will, as charged by the will upon the real estate. The special surrogate of Tompkins county has affirmed their contention, and directed payment to them of these legacies in full.

Argued before PARKER, P. J., and SMITH, LYON, CHASE, and CHESTER, JJ.

David M. Dean, for appellant.
Randolph Horton, for respondents.

SMITH, J. The construction of the will in question presents some problems not easy of solution. I am convinced that it was intended that the testator's widow should have the use of the homestead farm for life, and that she should in no way be deprived of that use by a sale of the property for the payment of any legacies. The legacy of $1,000 given to her for the erection of the two houses for the benefit of the respondents here was to be paid from the personal

property. In this should be included the proceeds of real estate other than the homestead farm, which the executors were author-ized and empowered to sell under the fourth clause of the will. That real estate was charged with the payment of this legacy. The legacy was not, in my judgment, charged upon the homestead farm, or the land adjoining it, which was given to the widow for use during her life. The very use to be made of the legacy negatives an intention to charge it upon the homestead farm. It was to be used during the life of the widow for the purpose of erecting two houses upon the property owned by the widow, which she was, in her will, to give to these beneficiaries.

Whether the legacies given to the respondents by the codicil to the will were a charge upon the homestead farm presents a more difficult question. If those legacies must be held to be payable upon the death of the testator, I should strongly incline to think that they were not charged upon the homestead farm. As I have before indi-cated, I cannot believe that the testator intended that in any event the use of the homestead farm should be taken from his widow. While these legacies are absolute in terms, I think it was not in-tended that they should be enjoyed until after the death of the widow. The testator is presumed to have known that he had no property with which to pay them until after the death of the widow. The legacy of $1,000 given to his widow for their benefit by the second clause of the will was to be enjoyed by them only after the death of the widow, when they should receive, under the widow's will, the land upon which the houses were to be built. After the death of the widow, the surviving executor was directed to sell the homestead farm "for the purpose of carrying out this instrument." In view of all these circumstances, the probable intention of the testator was to give to these respondents these legacies of $1,000, making them pay-able at the death of the widow, and from the proceeds of the home-stead farm. With this construction, the will seems to be consistent, and one possible of execution.

The decree should therefore be reversed on law and fact, and the matter remitted to the surrogate, with directions to proceed in ac-cordance with the views here expressed. All concur; PARKER, P. J., in result.